In the Matter of the Claim of THERESA NORRIS, Respondent, against THE NEW YORK CENTRAL RAILROAD COMPANY, Appellant.

STATE INDUSTRIAL BOARD, Respondent.

Third Department, May 4, 1927.

Workmen's compensation — accident arising out of and in course of employment — decedent was employed as milk handler and his duties required him to work in car loading and unloading — decedent was found fatally injured away from place of work — no evidence as to why decedent left place of work — statutory presumption, under Workmen's Compensation Law, § 21, not applicable — claim dismissed.

An award to dependents for the death of claimant's husband cannot be sustained. The decedent was engaged as a milk handler on milk cars in defendant's New York yards. His work required him to be on the car for the purpose of loading and unloading and he was not permitted to deliver milk until the load had been checked by the boss. Decedent was found fatally injured a distance from the car in which he was working. There is no·evidence as to why the decedent left his place of work and was at the place where he was found injured. The contention that he may have left his car for the purpose of reporting to his boss or for the purpose of going to a toilet has no evidence to support it, and is founded on a mere guess or speculation. If, as contended, the decedent left his work for the purpose of going to a lunch room and was injured while on his way, then he was, at the time of the accident, outside his employment, and the award cannot be sustained.

The statutory presumption authorized by section 21 of the Workmen's Compensation Law cannot be resorted to in the absence of some legal proof to show that the injury was suffered while the decedent was in the course of his employment.

APPEAL by the New York Central Railroad Company from an award of the State Industrial Board, made on the 16th day of March, 1926.

*Whalen, Murphy, McNamee & Creble* [*Robert E. Whalen* of counsel], for the appellant.

*Albert Ottinger, Attorney-General* [*E. C. Aiken, Deputy Attorney-General,* of counsel], for the respondents.

VAN KIRK, Acting P. J.  A dependency case: The appellant maintains that the accidental injury which caused the death of the employee did not arise out of, or in the course of, the employment. The accident was unwitnessed.

The New York Central yards in New York city lie between Eleventh and Twelfth avenues and between Thirtieth and Thirty-fourth streets.  The deceased, Norris, was a milk handler.  When

a milk train comes into this yard a milk handler is assigned to each car. It is his duty to check up the cans, unload the car and reload it with empty cans; also to remain at his car until all the cans of milk have been delivered to the truckmen. He reports his check-up to his boss, who has the running slip, comes to the car and in turn checks up the count of the handler. The handler is not permitted to deliver any milk from his car until the load has been checked up by the boss.

Norris went to work about eleven o'clock in the evening; his working hours continued until morning. He was assigned to a car; he checked up his load and the boss approved his report. A part of his load had been delivered. A little before one o'clock A. M., he was seen to leave his car and go easterly upon a roadway which ran through the yard from Eleventh to Twelfth avenues. His car was a part of the train which stood next to, and parallel to, this roadway. Southerly of this roadway and running parallel to, and less than 200 feet from, it was another roadway. About one o'clock he was found fatally injured, lying in this southerly roadway. These roadways were open to the avenues at each end. A taxicab was seen to drive rapidly along this roadway from Eleventh avenue; it passed nearly to Twelfth avenue, turned baout and drove rapidly back to Eleventh avenue. Norris was found at about the point where this taxicab had turned. No one saw him struck and no one knows whether he was struck where he fell or whether he had been carried on some part of the taxicab for some distance. No witness attempts to tell why Norris left his milk car. His car was but partly unloaded.

In seeking an explanation it has been said that it was his duty to report to his boss any defect in milk cans, or in the equipment of the car, or any shortage of milk; that his boss had no office in the yard and that, if occasion to report to him arose, the men had to seek him wherever he might be found. But there is no suggestion that there was any shortage of milk, or anything to be reported. On the contrary, there apparently was nothing to report because Norris was not permitted to deliver any milk until his report had been checked up by the boss; the boss that evening had checked up his car and Norris had delivered part of his load. About fifteen minutes before Norris was found in the roadway his boss had talked with him. The boss then continued westerly to examine the remainder of the cars and was thereafter, until he heard of Norris' injury, along and near this milk train. It seems the merest guess, not a fair inference, that Norris started to find the boss in order to make some report to him.

Another suggestion is that he may have gone to answer a call

of nature, that there was no toilet in the yard and the men were accustomed to use any convenient place; that he may have been seeking such a place. But the space between the two roadways above mentioned was filled with cars; the six tracks in this space were used generally as storage tracks. If Norris was seeking a retired spot it could hardly have been necessary for him to have gone on to the southerly roadway where he was found injured. There is also evidence that, in the yardmaster's office, which is on Eleventh avenue still further south than the roadway on which he was found, there was a toilet, to which he may have been going; and it is suggested that he may have been struck by the taxicab while in Eleventh avenue and carried on it along the roadway in the yard until the cab turned and he fell from it. This seems very improbable. For one reason the surface of the roadway was very rough and those who saw the cab driven say that it was going very fast and bumping about. Nor is there anything to suggest that he was going to the yardmaster's office.

There is one further suggestion. There was a restaurant or lunch wagon on Twelfth avenue at the westerly end of the roadway where coffee and sandwiches were sold. It was suggested that he may have been going to this. If so, this would be for his personal affair and not in the service of his master; and, in so going, he would have stepped out of his employment and would not be entitled to compensation for the injury. (*Matter of Clark* v. *Voorhees*, 231 N. Y. 14; *Matter of Di Salvio* v. *Menihan Co.*, 225 id. 123.) For like reason a dependency award could not be made.

There is no other reason suggested why Norris had left his car. We have, therefore, this: That his accidental injury was sustained within his regular hours of work; immediately before the accident he was performing his regular duties; he was struck by a cab either on Eleventh avenue, or more probably in a roadway within the yards of the employer. But he had left the job on which he was employed for no reason disclosed in the record. That he left to do something in the scope of his employment or in the interest of his employer cannot be fairly inferred from any facts established. Claimant relies upon the presumption that " the claim comes within the provision of this chapter." (Workmen's Compensation Law, § 21.) We have recently held that in order to authorize an award there must be some " legal proof in respect to the accidental injury, its occurrence in the course of the employment, and its causation by the employment." (*Van Cise* v. *Standard Oil Co. of N. Y.*, 209 App. Div. 838, 839; affd., 239 N. Y. 587.) We have sustained awards where, from the facts established, fair inference could be

362        People ex rel. Hazzard, Inc., v. Gilchrist.

Third Department, May, 1927..        [Vol. 220

drawn in support of the award, but have not sustained any upon naked presumptions under section 21.

The award should be reversed and the claim dismissed, with costs against the State Industrial Board.

Hinman, McCann, Davis and Whitmyer, JJ., concur.

Award reversed and claim dismissed, with costs against the State Industrial Board.